2020 IL App (1st) 180266-U

No. 1-18-0266

Order filed January 16, 2020

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 97 CR 25447 02 |
| | ) | |
| RANDALL JARRETT, | ) | Honorable |
| | ) | Kenneth J. Wadas, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BURKE delivered the judgment of the court.
Justices Lampkin and Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant failed to establish the gist of a constitutional claim to warrant further proceedings under the Post-Conviction Hearing Act.

¶ 2    Defendant Randall Jarrett appeals from the summary dismissal of his *pro se* petition for post-conviction relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). On appeal, defendant contends the trial court erroneously dismissed his petition where he set forth a non-frivolous claim of a constitutional violation, namely the court's imposition

of a discretionary life sentence where defendant had an intellectual disability and its failure to consider the attendant circumstances of defendant's intellectual disability during sentencing. For the following reasons, we affirm.

¶ 3    Defendant has not filed a copy of the common law record or reports of proceedings containing any matters prior to the 2017 post-conviction proceeding. Therefore, by necessity, our recitation of the facts of the underlying 2003 trial proceedings is taken from our 2007 order addressing defendant's direct appeal (*People v. Jarrett*, No. 1-04-2025 (2007) (unpublished order under Supreme Court Rule 23)) and the December 2017 circuit court order dismissing defendant's post-conviction petition.

¶ 4    Following a bench trial in March 2003, defendant was found guilty of three counts of first-degree murder and one count of armed robbery stemming from the 1997 murder of Herman Bailey in Chicago. The evidence at trial established that, on September 2, 1997, defendant, along with his codefendant uncle, traveled to Bailey's office in order to rob him. They repeatedly struck Bailey in the head with a hammer they had brought with them and robbed him of money and a gold chain.

¶ 5    On July 7, 2003, the court ordered a behavioral clinical examination for the purpose of determining defendant's fitness for sentencing. Following a three-day fitness hearing, the court found defendant was fit for sentencing but, because his IQ score was 75, was statutorily exempt from the death penalty. On May 13, 2004, the court sentenced defendant to concurrent prison terms of discretionary natural life for first-degree murder and 30 years for armed robbery.[1]

---

[1] Our 2007 order conflicts with the trial court's 2017 dismissal order regarding whether these sentences are concurrent or consecutive. The record on appeal is insufficient to resolve the conflict. We adopt the findings of the 2007 order stating the sentences are concurrent.

¶ 6     Defendant filed a direct appeal with this court, arguing that the trial court erred by not inquiring into his pretrial *pro se* ineffective assistance of counsel claims and that one of his two convictions for murder and his conviction for armed robbery should be vacated under the one-act, one-crime rule. *People v. Jarret*, No. 1-04-2025 (unpublished order under Supreme Court Rule 23). On January 12, 2007, this court vacated one of defendant's murder convictions, but affirmed in all other respects. *Id.*

¶ 7     On September 27, 2017, defendant filed a 452-page *pro se* post-conviction petition with the Circuit Court of Cook County.[2] Relevant here, defendant claimed his life sentence was unconstitutional because the court had determined he was intellectually disabled.[3] In support of this claim, defendant asserted the sentencing court conducted a hearing "for assessing his intellectual functioning," and determined he was intellectually disabled based upon "expert witness psychological results consistent with legislative policy." Defendant claimed that, after the fitness hearing, the court stated: "I no longer believe your (*sic*) retarded. Although you are eligible for a term of 20 to 60 years now, you have already escaped the death penalty, I am enhancing your sentence and giving you natural life plus 30 years." Defendant argued that he was deprived of a fair sentencing hearing where he was eligible for a term of 20 to 60 years' imprisonment due to

---

[2] The copy of the petition included in the record on appeal is missing at least one page in issue 1, so we address the claim using the information available to us. As the appellant, it is defendant's burden to provide a sufficient record to support his claim of error, and any incompleteness in the record will be resolved against him. *Foutch v. O'Bryant,* 99 Ill. 2d 389, 391-92 (1984). We note the majority of defendant's argument on appeal arises from issue 4 in his petition, which is complete in the record.

[3] While defendant consistently uses the terminology "mentally retarded" throughout both his post-conviction petition and his briefing on appeal, the correct terminology currently is "intellectually disabled." *People v. Coty*, 2018 IL App (1st) 162383, ¶ 1, n. 1 (" 'mentally retarded' * * * is no longer the preferred nomenclature"). We therefore use "intellectually disabled" rather than "mentally retarded."

his intellectual disability, and the sentencing court improperly enhanced his sentence to "natural life plus 30 years" due to its own speculation and personal opinion of defendant's mental capacity.

¶ 8    In a separate claim, defendant argued his sentence was cruel and unusual punishment, and violated due process of law and the proportionate penalties clause of the Illinois Constitution, "given [his] history from the mitigation report, including his low IQ score," and he was "categorically less culpable." He analogized his intellectual functioning to that of a juvenile offender, citing *Atkins v. Virginia*, 536 U.S. 304 (2002) (holding executions of intellectually disabled individuals are unconstitutional under the eighth amendment) and *Roper v. Simmons*, 543 U.S. 551 (2005) (citing *Atkins*, holding executions of individuals under 18 years of age is unconstitutional). Defendant argued the sentencing court improperly failed to take into account "the hallmark features" of intellectual disability before sentencing him to natural life imprisonment without parole, analogizing the sentencing of intellectually disabled persons to the sentencing of juveniles, citing *Atkins*, *Roper*, and *Miller v. Alabama*, 567 U.S. 460 (2012) (holding mandatory life imprisonment without parole for juvenile offenders is unconstitutional under the eighth amendment).[4]

¶ 9    Defendant attached voluminous exhibits to his petition, including an affidavit from his codefendant uncle asserting defendant did not know the uncle intended to kill Bailey, an article published in the Journal of Criminal Law and Criminology regarding sentencing mitigation for young adults, a letter from defendant's appellate defender, writings by defendant, and certificates he earned while incarcerated.

---

[4] While defendant did not provide the full citation for *Miller*, we infer from the context in which it was used that defendant was citing to *Miller v. Alabama*, 567 U.S. 460 (2012).

¶ 10    On December 18, 2017, the trial court entered a written order dismissing defendant's petition, finding defendant's claims frivolous and patently without merit. The court was aware of no case or statute prohibiting life sentences for intellectually disabled persons. It further found the sentencing court "diligently analyzed [defendant's] fitness for sentencing and imposed a lawful life sentence for a heinous crime," and defendant was ineligible for the protections offered by *Miller* and its progeny as he was not a juvenile at the time of the offense.

¶ 11    On appeal, defendant argues the trial court erred when it summarily dismissed his post-conviction petition because he set forth a non-frivolous claim of a constitutional violation, namely that the sentencing court improperly imposed a discretionary life sentence without parole "for a purportedly [intellectually disabled] person" without considering the "proper attendant circumstances" of his diminished capacity.

¶ 12    The Act provides a method by which imprisoned persons may collaterally challenge their convictions for violations of federal or state constitutional rights. 725 ILCS 5/122-1 *et seq*. (West 2016); *People v. LaPointe*, 227 Ill. 2d 39, 43 (2007). At the first-stage of post-conviction proceedings, the trial court must independently review the petition, taking the allegations as true, and determine whether "the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2016); *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). A petition is frivolous or patently without merit if it has no arguable basis either in law or in fact and, rather, is based on a meritless legal theory or fanciful factual allegations. *People v. Hodges*, 234 Ill. 2d 1, 11-13, 16 (2009). An example of a petition which lacks an arguable basis in law or fact is one which is completely contradicted by the record. *Id*. at 16-17; *People v. Coleman*, 183 Ill. 2d 366, 380-81 (1998) ("[T]he allegations in the petition must be supported by the record in the case or by its

accompanying affidavits. Nonfactual and nonspecific assertions which merely amount to conclusions are not sufficient to require a hearing under the Act." (Internal citations omitted.)). Our review of the summary dismissal of defendant's petition is *de novo*. *Hodges*, 234 Ill. 2d at 9. For the following reasons, we find defendant's claim that the court erred in imposing a natural life sentence on him, an intellectually disabled adult, to be frivolous and patently without merit.

¶ 13    Defendant's contention that the sentencing court failed to consider the attendant circumstances of his intellectual disability would normally be verifiable by a review of the report of proceedings, and possibly the common law record, for the original trial court proceedings. Indeed, defendant contends that a petition should only be dismissed if a quick look at the record shows that the allegations therein are absolutely untrue or without merit. See *People v. Rivera*, 198 Ill. 2d 364, 372 (2001). He argues "[t]here is no record [here] that the proper attendant circumstances * * * were considered by the sentencing body." There is no record regarding whether the sentencing court considered the proper factors because defendant failed to provide it. Not only did he not attach relevant support to his petition as will be discussed below, he failed to provide this court with the underlying record of the sentencing proceedings.

¶ 14    This court has consistently upheld dismissals of post-conviction petitions at the first stage where the allegations are contradicted by the record from the original trial proceedings. See, *e.g.*, *People v. Rogers*, 197 Ill. 2d 216, 221-22 (2001); *People v. Hernandez*, 2014 IL App (2d) 131082, ¶ 17; *People v. Deloney*, 341 Ill. App. 3d 621, 629 (2003). The trial court was apparently able to review the record of the original trial proceedings before it summarily dismissed the petition. However, this court does not have this same benefit because defendant did not file a copy of the common law record or reports of proceeding from sentencing for our review. Counsel offers no

explanation for their absence in the record on appeal, even though the State directly addresses this point. On the limited record before us, we cannot know what the sentencing court considered. In fact, we cannot verify that defendant was in fact found to be intellectually disabled or the extent of his disability. Any doubts which may arise from the incompleteness of the record, including the degree to which the sentencing court considered his intellectual disability, must be resolved against defendant. See *Foutch,* 99 Ill. 2d at 391-92 (it is the appellant's burden to provide a sufficiently complete record to support a claim of error and any incompleteness in the record is resolved against the appellant).

¶ 15    Further, defendant provided no factual support with his petition for his assertion that he is intellectually disabled and the court did not consider the attributes of his intellectual disability at sentencing. Although a first-stage post-conviction petition has a low threshold to survive summary dismissal, a *pro se* petitioner is not excused from providing factual support for his claims, and must supply a "sufficient factual basis to show the allegations in the petition are 'capable of objective or independent corroboration.' " *People v. Allen*, 2015 IL 113135, ¶ 24 (quoting *People v. Collins*, 202 Ill. 2d 59, 67 (2002)). To that end, the Post-Conviction Act requires a petition to attach affidavits, records, or other evidence supporting its allegations or state why they are not attached. 725 ILCS 5/122-2 (West 2016); *Hodges*, 234 Ill. 2d at 10. Unsupported allegations in a post-conviction petition are frivolous and patently without merit. See *Collins*, 202 Ill. 2d at 68-69.

¶ 16    Here, defendant attached no "affidavits, records, or other evidence" supporting his claim that the sentencing court failed to consider the attendant characteristics of his intellectual disability in sentencing him. The voluminous exhibits attached to his petition contain no factual support that defendant had an intellectual disability, let alone that the court failed to consider the attendant

characteristics of that disability during sentencing. Nor does defendant explain in his petition why this evidence is not attached. Defendant's assertions are fanciful factual allegations, unsupported and merely speculative, which is insufficient even at the first stage of post-conviction proceedings to state the gist of a constitutional claim. See *Hodges*, 234 Ill. 2d at 10; see *Collins*, 202 Ill. 2d at 68-69. Accordingly, we find defendant's unsupported claim that the sentencing court failed to consider the attendant characteristics of his intellectual disability in sentencing him to a natural life sentence frivolous and patently without merit.

¶ 17    Defendant cites to *People v. Coty*, 2018 IL App (1st) 162383, *appeal allowed*, No. 123972 (Ill. Jan. 31, 2019), for the proposition that the imposition of a life sentence on an individual with an intellectual disability without the procedural safeguards of *Miller* and its progeny creates constitutional error. See *Coty*, 2018 IL App (1st) 162383, ¶ 86. In *Coty*, on direct appeal following the defendant's resentencing, citing *Miller*, the court analogized defendants with intellectual disabilities to juvenile defendants, finding they should be treated similarly in a proportionality analysis. *Id.* ¶ 69. The court found the trial court's imposition of a *de facto* life sentence on an intellectually disabled defendant violated the proportionate penalties clause of the Illinois Constitution because the record revealed the trial court was not presented with "any information about the state of the attributes of the defendant's intellectual disability" at the time of resentencing, which occurred 10 years after his original sentencing. *Id.* ¶ 86. *Coty* found the trial court's imposition of a *de facto* life sentence without the necessary facts from which to determine whether the defendant could be restored to useful citizenship or was irretrievably depraved was so wholly disproportionate as to violate the moral sense of the community. *Id.*

¶ 18    Defendant argues that, as in *Coty*, this court should find the sentencing court's imposition of a discretionary life sentence "without a record sufficient to assess the unique factors that can impact the culpability of the intellectually disabled" was constitutional error. See *Coty*, 2018 IL App (1st) 162383, ¶ 56. We decline defendant's invitation to apply *Coty* here. Unlike in *Coty* where the record on appeal showed the defendant's intellectual disability was undisputed (*Id*. ¶¶ 15, 85), here the record on appeal is insufficient to show defendant is similarly situated. Moreover, in *Coty*, the appellate court clearly had the transcript from the resentencing hearing and could unequivocally conclude that the trial court was not presented with current evidence about the defendant's intellectual disability. *Id*. ¶ 82. Here, without the sentencing record, we cannot conclude that the trial court was not presented with information about defendant's alleged intellectual disability to consider. Without this most basic information, we find that *Coty* is distinguishable on its face, and we need not further consider its applicability.

¶ 19    As a final matter, in defendant's reply brief, he raises a new argument for the first time on appeal: the trial court violated the standard applicable for first-stage post-conviction proceedings. He claims the court improperly went "far beyond" taking a "quick look" at the record and made conclusions that went beyond factfinding and were reserved for second and third stage proceedings. Because defendant raises this argument for the first time in his reply brief, it is considered forfeited. Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018); *People v. Chatman*, 2016 IL App (1st) 152395, ¶ 40.

¶ 20    For the foregoing reasons, we affirm the trial court's summary dismissal of defendant's post-conviction petition.

¶ 21    Affirmed.