NOTICE

Decision filed 02/23/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 231357-U

NO. 5-23-1357

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Macon County. |
| | ) | |
| v. | ) | No. 15-CF-1119 |
| | ) | |
| SHAITAN L. COOK JR., | ) | Honorable |
| | ) | Thomas E. Griffith, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BOLLINGER* delivered the judgment of the court.
Justices Boie and Sholar concurred in the judgment.

**ORDER**

¶ 1   *Held*: We affirm the first stage summary dismissal of defendant's postconviction petition, where his claim of ineffective assistance of counsel is frivolous and patently without merit as it fails to set forth the requisite factual basis outlined in 725 ILCS 5/122-2 (West 2022).

¶ 2   Following a fully negotiated plea agreement, pursuant to which he pleaded guilty to a charge of nonfirearm first degree felony murder, defendant-appellant, Shaitan L. Cook Jr., was sentenced to 20 years in prison. Defendant filed a timely motion to withdraw his plea, which was denied by the circuit court and affirmed on direct appeal. *People v. Cook*, 2023 IL App (4th) 210621. Defendant thereafter filed a *pro se* postconviction petition asserting that he did not

_____

*Justice Welch was originally assigned to the panel. Justice Bollinger was later substituted on the panel and has read the briefs.

1

knowingly enter a plea of guilty, where his trial attorney withheld critical discovery that would have affected his decision to plead guilty. The circuit court dismissed the petition at the first stage of the proceeding. We find that the circuit court did not err in summarily dismissing the petition.

¶ 3                                    I. BACKGROUND

¶ 4     Defendant was charged with multiple counts of first degree murder and attempted first degree murder arising out of his alleged participation as a 16-year-old accomplice in a robbery during which two people were shot, one of whom later died. Relevant to this appeal, count IV of the information alleged that defendant committed first degree felony murder in that he was committing or attempting to commit the forcible felony of armed robbery while armed with a firearm, and Cesley Taylor was shot with a gun and killed during the commission of the offense. See 720 ILCS 5/9-1(a)(3) (West 2014). On February 24, 2020, defendant entered into a fully negotiated guilty plea wherein he agreed to plead guilty to first degree felony murder (amended count IV of the information) in exchange for receiving the statutory minimum sentence of 20 years in prison. See 720 ILCS 5/9-1(a)(3) (West 2014); see also 730 ILCS 5/5-4.5-20 (West 2014). The amended count IV removed the firearm enhancement, and provided that Cesley Taylor's death resulted from a dangerous weapon. "Defendant acknowledged that he understood his rights; he specifically stated that he understood he was giving up his rights to trial and to confront or cross-examine witnesses and further that he was agreeing that the State could prove him guilty of the amended count beyond a reasonable doubt." *Cook*, 2023 IL App (4th) 210621, ¶ 7. "He further acknowledged that no one forced him into the plea agreement and that his lawyer answered his questions." *Id.*

¶ 5     The factual basis for the plea was read into the record. The factual basis provided that, "on September 7, 2015, just after 9:00 o'clock, this defendant, Daiquan Cline, and Darion Evans, and

Ryan O'Neal planned the robbery of Cesley Taylor. On the night of September 7, 2015, Ryan O'Neal was inside shooting dice with Cesley Taylor. Her girlfriend, Brittney Wilson, was in the back of the apartment." It provided that, "Mr. O'Neal texted Daiquan Cline that they could come in, and Daiquan Cline, along with Darion Evans, who had a Spiderman mask and a .22 caliber handgun, this defendant, who had masked his face and had a BB gun, knocked on the door and entered the apartment. Darion Evans produced his gun. All the defendants took items from the apartment, whether it was money, a change purse, or a phone." It provided that, "Darion Evans then *** fired a dangerous weapon repeatedly. Brittney Wilson was shot, but lived, and Cesley Taylor passed away that night in her apartment."

¶ 6    On March 3, 2020, defendant filed a *pro se* motion to reconsider his sentence. On August 23, 2021, defendant's *pro se* motion was amended by counsel to a motion to withdraw his guilty plea and was filed on defendant's behalf along with a Rule 604(d) certificate of counsel. The motion asserted that defendant's plea was not knowingly, intelligently, or voluntarily made.

¶ 7    On October 14, 2021, a hearing on the motion to withdraw defendant's guilty plea was conducted. Defendant testified in support of the motion. Defendant said he believed the evidence was not sufficient to convict him of felony murder on the theory of accountability. Defendant testified that he would have argued at trial that he did not know the robbery was going to take place. Defendant said he believed his sentence was excessive given his age, the totality of the circumstances, and that he had "never been in any type of trouble." Defendant also testified to his belief that he was coerced into entering his guilty plea because nothing was moving forward and nobody was helping him with his case. The circuit court denied the motion after stating its reasons on the record.

¶ 8    Defendant appealed, asserting that some of his statements in the hearing on the motion to withdraw his guilty plea invoked a *Krankel* inquiry. *Cook*, 2023 IL App (4th) 210621; *People v. Krankel*, 102 Ill. 2d 181 (1984). In an opinion filed on March 9, 2023, the Fourth District Appellate Court determined that it had jurisdiction to consider the merits of the appeal because, though the *pro se* motion to reconsider sat dormant for over a year, the motion was timely filed, no objection was made to the matter proceeding, and the motion to withdraw the defendant's guilty plea was also timely. *Cook*, 2023 IL App (4th) 210621, ¶ 47. The Fourth District ultimately affirmed, finding that defendant's statements were not enough to invoke a *Krankel* inquiry. *Id.* ¶ 68.

¶ 9    On September 13, 2023, defendant filed a *pro se* postconviction petition. The petition claimed that he acquired newly discovered evidence that established his actual innocence. Defendant asserted that in March of 2023, he had a conversation with Erica Echols, a mutual friend of he and his codefendant Evans. Defendant claimed Echols informed him that Evans told Echols "how he had spoken with Defendant[']s trial attorney sometime back in 2019," and told the attorney that defendant did not know Evans "had a gun on his person, that there was never any plan to go over to the Taylor residence to rob Cesley or to engage in any illegal activity and that he, Evans, would testify to those facts at Defendant[']s trial or any motion hearing." Defendant claimed that "[a]t no time prior to Defendant[']s March 2023 conversation with Ms. Echols was he aware that his co-defendant, Mr. Evans, informed Defendant[']s trial attorney that he, Mr. Evans[,] would provide testimony absolving him of any culpability in the robbery/murder of Ms. Taylor." Defendant claimed that this evidence that he described as "newly discovered" also formed the "basis of an ineffective assistance of counsel claim." Defendant claimed that his trial counsel interviewed Evans and that his trial counsel never informed defendant of his interview with Evans, Evans' disclosure absolving defendant, or Evans' willingness to testify on defendant's behalf.

4

Defendant claimed that he was "unduly pressured" by his trial counsel "into accepting a plea deal without knowledge of all the pertinent facts to knowingly, intelligently and freely enter into his plea deal." Defendant stated that, if he had known the aforementioned information, "he would not have accepted the plea deal but instead would have elected to go to trial."

¶ 10    On September 27, 2023, defendant filed a document entitled "Supplemental Exhibits." The document indicated that "Erica Echols was in possession of an affidavit that supports Defendant[']s actual innocence claim, but was unable to obtain said affidavit before Defendant would be time barred from filing said petition." The document also stated, "On or about Wednesday[,] September 13, 2023, Defendant received the affidavit and text messages Ms. Echols had been exchanging with Darion Evans (See affidavit and text attached hereto as exhibit B)."

¶ 11    The attached affidavit from Echols stated the following:

"To whom maybe [*sic*] concern, due to Darion being in segregation he is limited in the law library, and probably didn't have enough time to write an affidavits [*sic*] before Cook[']s deadline. Darion contacted me and said 'he was going to write the affidavits for Cook but he's going to segregation for 6 months & will try to get it done' me and Darion was contacting before he out I was still in contact with Cook after finding out he ask why Cook on an appeal that's when I explained Cook took 20 years he explained to me about what he said to Cook[']s attorney he stated 'Cook had nothing to do with the crime, he didn't know I had a gun and Cook shouldn't have been charged accountable for my actions that night. Cook didn't take any parts of the robbery or murder that night. I didn't know Cook indicated the message to him.' "

Echols' signature is present at the bottom of the affidavit. The only other document attached to the "Supplemental Exhibits" is a screenshot of a text exchange. The screenshot shows that "Mariah"

5

sent a message on Monday, July 24, at 6:07 p.m., stating, "Darion said he got yo [*sic*] message he said he love you and he said tell tank I'm going to get these affidavits in line for us from buddy nem so we can slide home he said he gone call as soon as he get [*sic*] the chance to but he in seg for 6 months." The screenshot also shows a response from an unnamed individual sent the same day at 8:17 p.m., stating, "Tell him I love him too and I'm glad he did. [*sic*] What he [*sic*] going to seg for? & why for 6 months? I thought that was a 30 day thing."

¶ 12    On December 11, 2023, the circuit court entered an order summarily dismissing defendant's *pro se* postconviction petition at the first stage of proceedings. In the order, the circuit court stated that defendant's claim was not supported by any affidavit, records, or other evidence, and was a mere conclusion which had no basis in fact. The circuit court noted that the only evidence submitted by defendant was a signed affidavit from Echols, indicating that she was attempting to obtain a statement from Evans, and also that defendant's claim was contrary to the evidence submitted as part of the factual basis at his plea hearing and the evidence presented at his codefendant's trial. The circuit court also stated that defendant's claim of ineffective assistance of counsel did not assert an arguable basis for objectively deficient performance or prejudice, nor did defendant's attorney submit an affidavit to support his conclusions. Ultimately, the circuit court found that defendant's petition was frivolous and patently without merit. This timely appeal followed.

¶ 13                                    II. ANALYSIS

¶ 14    Defendant argues a single issue on appeal that his *pro se* postconviction petition stated the gist of a constitutional claim, such that it should have survived the first stage of a postconviction proceeding, where he asserted his counsel was ineffective for allegedly not providing him with information that he believed would have changed his decision to plead guilty. The State argues

6

two points in response: (1) that the Illinois Supreme Court case *People v. Jones*, 2021 IL 126432, forecloses defendant's argument, as he waived the right to challenge his conviction and sentence when he knowingly and voluntarily entered a fully negotiated plea agreement and (2) if this court determines that waiver does not apply, this court should still affirm because defendant's *pro se* postconviction petition was frivolous and patently without merit. In his reply, defendant clarifies his position that his guilty plea was not knowing and voluntary because of his counsel's ineffective assistance, and he therefore did not waive his right to challenge his conviction and sentence. We affirm the first-stage summary dismissal of defendant's *pro se* postconviction petition, finding that defendant's petition is frivolous and patently without merit and does not satisfy section 122-2 of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-2 (West 2022)).

¶ 15                                    A. Waiver

¶ 16    We will first address the State's waiver argument. Our court in *People v. Evans*, 2023 IL App (5th) 220313-U, reviewed an appeal from one of the codefendants in this case, in light of the *Jones* case. In *Evans*, and in light of *Jones*, we stated "our Illinois Supreme Court intends to decline to extend relief, where a defendant *knowingly* entered into a negotiated plea *and failed to raise the issue in either a motion to reconsider or to withdraw the plea*. Thus, defendant's knowing and voluntary guilty plea waived any constitutional challenge." (Emphases added.) *Evans*, 2023 IL App (5th) 220313-U, ¶ 22 (citing *People v. Sophanavong*, 2020 IL 124337, ¶ 33, and *Jones*, 2021 IL 126432, ¶ 21). Applying our analysis from *Evans*, since defendant challenges that he knowingly entered into the negotiated plea, and since defendant filed a timely motion to reconsider sentence that was later amended into a motion to withdraw his guilty plea, it cannot be found that his negotiated plea waived his argument on appeal here.

¶ 17                              B. First-Stage Summary Dismissal

¶ 18    We next address defendant's argument that the claim of ineffective assistance raised in his postconviction petition was not frivolous and patently without merit. The Act "provides a three-stage process for the adjudication of post-conviction petitions. In the first stage, the circuit court determines whether the post-conviction petition is 'frivolous or is patently without merit.' " *People v. Boclair*, 202 Ill. 2d 89, 99 (2002) (quoting 725 ILCS 5/122-2.1(a)(2) (West 2000)). "The State does not have an opportunity to raise any arguments against the petition during this summary review stage." *Id.* (citing *People v. Gaultney*, 174 Ill. 2d 410 (1996)). "The circuit court is required to make an independent assessment in the summary review stage as to whether the allegations in the petition, liberally construed and taken as true, set forth a constitutional claim for relief. The court is further foreclosed from engaging in any fact finding or any review of matters beyond the allegations of the petition." *Id.* (citing *People v. Coleman*, 183 Ill. 2d 366 (1998)). "To survive dismissal at this stage, the petition must only present 'the gist of a constitutional claim.' " *Id.* (quoting *Gaultney*, 174 Ill. 2d at 418). "If the petition is found to be 'frivolous' or 'patently without merit,' the court 'shall dismiss the petition in a written order, specifying the findings of fact and conclusions of law it made in reaching its decision.' " *Id.* at 100 (quoting 725 ILCS 5/122-2.1(a)(2) (West 2000)). If the petition survives the initial stage, the proceeding moves to the second stage, where counsel may be appointed to an indigent defendant, and counsel has the opportunity to amend the petition. *Id.* "In the second stage, the defendant bears the burden of making a substantial showing of a constitutional violation." *People v. Allen*, 2015 IL 113135, ¶ 21 (citing *People v. Coleman*, 206 Ill. 2d 261, 277 (2002)). "If the defendant has carried his burden to make a substantial showing of a constitutional violation throughout the second stage, the court advances the petition to the third stage. At the third stage, the court may receive 'affidavits, depositions, oral

8

testimony, or other evidence,' to weigh the merits of the petition and determine whether the defendant is entitled to relief." *Id.* ¶ 22 (quoting 725 ILCS 5/122-6 (West 2008)).

¶ 19    At the first stage, "[i]f a petition alleges sufficient facts to state the gist of a constitutional claim, even where the petition lacks formal legal argument or citations to authority, first-stage dismissal is inappropriate." *Id.* ¶ 24 (citing *People v. Hodges*, 234 Ill. 2d 1, 9 (2009)). "A petition may be dismissed as frivolous or patently without merit only 'if the petition has no arguable basis either in law or in fact'—relying on 'an indisputably meritless legal theory or a fanciful factual allegation.' " *Id.* ¶ 25 (quoting *Hodges*, 234 Ill. 2d at 11).

¶ 20    The low threshold to survive summary dismissal at the first stage of a postconviction proceeding does not, however, "excuse the *pro se* petitioner from providing factual support for his claims; he must supply sufficient factual basis to show the allegations in the petition are 'capable of objective or independent corroboration.' " *Id.* ¶ 24 (quoting *People v. Collins*, 202 Ill. 2d 59, 67 (2002)). The Illinois Supreme Court "has allowed the summary dismissal of a postconviction petition for being substantially incomplete. The Post-Conviction Hearing Act requires both a verification affidavit and supporting evidence to be attached to the petition." *Id.* ¶ 26 (citing 725 ILCS 5/122-1(b), 122-2 (West 2008)). "Where the petition lacks 'affidavits, records, or other evidence supporting its allegations,' the petitioner must explain in his pleading why that evidence is not attached." *Id.* (quoting 725 ILCS 5/122-2 (West 2008)). "[T]he purpose of section 122-2 is to show a defendant's postconviction allegations are capable of objective or independent corroboration." *People v. Hall*, 217 Ill. 2d 324, 333 (2005) (citing *Collins*, 202 Ill. 2d at 67). "[T]he failure to either attach the necessary ' "affidavits, records, or other evidence" or explain their absence is "fatal" to a post-conviction petition [citation] and by itself justifies the petition's summary dismissal.' " *People v. Delton*, 227 Ill. 2d 247, 255 (2008) (quoting *Collins*, 202 Ill. 2d

9

at 66, citing *Coleman*, 183 Ill. 2d at 380, quoting *People v. Jennings*, 411 Ill. 21, 26 (1952)). "Failure to attach independent corroborating documentation or explain its absence may, nonetheless, be excused where the petition contains facts sufficient to infer that the only affidavit the defendant could have furnished, other than his own sworn statement, was that of his attorney." *Hall*, 217 Ill. 2d at 333 (citing *Collins*, 202 Ill. 2d at 68).

¶ 21    Here, summary dismissal was appropriate where Echols' affidavit failed to support the allegation in the postconviction petition that Evans communicated information to defendant's attorney before defendant entered his guilty plea. Of significance, the affidavit does not mention when any alleged conversation occurred between Evans and defendant's counsel. Not only is the affidavit silent as to when this alleged conversation occurred, it contains only vague conclusory allegations lacking in any factual support. For these reasons, the affidavit fails to provide the necessary evidentiary support for defendant's contention that he did not enter a knowing and voluntary guilty plea on the basis of ineffective assistance of counsel. Where defendant failed to provide evidence that shows his allegations are capable of objective or independent corroboration, and there are no facts sufficient to infer that only his attorney could have furnished an affidavit, he failed to satisfy section 122-2 of the Act (725 ILCS 5/122-2 (West 2022)). Accordingly, the trial court did not err in summarily dismissing the petition.

¶ 22                                    III. CONCLUSION

¶ 23    Therefore, we affirm the summary dismissal of defendant's *pro se* postconviction petition at the first stage, where his petition was frivolous and patently without merit.

¶ 24    Affirmed.

10